UNITED STATES of America,
Plaintiff–Appellee,

v.

Stanley Asher COLE, a/k/a Oscar Ivan
Cole, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Dorrell Witham SMITH,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Diane SMITH, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Kharim HAMIDOL,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Vincent DOUGLAS, a/k/a Franklin
Rubie, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Clyde WALCOTT, a/k/a Ascentos
White, Defendant–Appellant.

Nos. 88–5512 to 88–5517.

United States Court of Appeals,
Fourth Circuit.

Argued July 26, 1988.

Decided Sept. 29, 1988.

Fred Warren Bennett, Federal Public Defender (Stanley Ford Needleman, Warren Anthony Brown, Jack B. Rubin, Baltimore, Md., Gregory Michael Wilson, Laurel, Md., Morris Lee Kaplan, Baltimore, Md., on brief), for plaintiff-appellee.

Katharine Jacobs Armentrout, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief) for defendants-appellants.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

Stanley Asher Cole, Dorrell Witham Smith, Diane Smith, Hamidol Kharim, Vincent Douglas, and Clyde Walcott jointly appeal their convictions on various drug charges. All were convicted of at least one count of conspiracy to distribute five kilograms or more of cocaine and of possession with intent to distribute over five hundred grams of cocaine. Cole was also convicted of operating a continuing criminal enterprise ("CCE"), one count of alien smuggling and additional counts of distribution of cocaine and possession with intent to distribute. Dorrell Witham Smith was also convicted of passport fraud. The appellants raise several contentions on appeal. Finding none of them worthy of reversal, we affirm.

## I.

The defendants' trial revealed a large-scale cocaine distribution ring, centered in Baltimore, Maryland, with its roots in Jamaica and led by Cole. From June, 1984 until March, 1987, the conspiracy prospered, utilizing sophisticated methods, including digital beepers to contact coconspirators, rental automobiles to avoid detection by police or competitors, and "stash" apartments to secrete cocaine. The conspirators also purchased legitimate businesses as fronts for their operation. In this regard, their largest investment was the purchase of the Exodus Nightclub from Anthony Boddiford. In all, records showed that over $100,000 of drug proceeds was invested in the nightclub.

Each of the defendants had a well-defined role in the operation. Dorrell Witham Smith ("Smitty") was the ring's supplier. He was a permanent alien resident of Miami, Florida, and would deliver a kilogram of cocaine to the organization at least once a month. A member of the ring would fly to Miami, pick up the cocaine, and return with it to Baltimore where it was ultimately sold on the street. Diane Smith, Cole's girlfriend, managed the Exodus Nightclub for the organization. More importantly, she rented the cars the ring used to conduct its street sale operation. Hamidol Kharim made contacts and actively sold cocaine for the ring. His home was also used as a central meeting place for the conspirators and his phone was used extensively to contact Cole's digital beeper. Vin-

cent Douglas and Clyde Walcott were primarily street salesmen for Cole's ring.

In addition to operating the drug distribution ring, it was also proven at trial that on at least two occasions, Cole smuggled illegal aliens into the United States from Jamaica. Once in Baltimore, the aliens became workers for the Cole cocaine ring.

Defendants were tried together. All were convicted. Each timely noted an appeal and the appeals were consolidated for disposition.

## II.

Initially, all appellants contend that the joinder of the various drug charges with Cole's alien smuggling charges constituted prejudicial error. They maintain that the initial joinder was improper under Fed.R. Crim.P. 8(a) because the alien smuggling count was unrelated to the drug counts and that severance was subsequently required because, under Fed.R.Crim.P. 14, evidence of the joined charges was unfairly prejudicial. Appellants also contend that the trial court erred by admitting the testimony of Joseph Boddiford concerning a statement made to him by Cole. Their position is that the prosecution was obligated, under both Fed.R.Crim.P. 16 and the terms of an informal discovery agreement, to turn the statement over to them before trial, and that the prosecution's failure to do so, should have precluded the admission of the evidence. We address each of these contentions in turn.[1]

In regard to the joinder of the alien smuggling and drug offenses, the appellants argue that there was no proof of an express agreement between Cole and the aliens that upon entry into the country they had to work for his organization and thus, even though they did eventually work for Cole, the drug conspiracy and the alien smuggling were not connected.[2] They further argue that this joinder prejudiced them because the evidence of the alien smuggling made the drug conspiracy appear international in scope and more heinous than it actually was. Likewise, Cole maintains that the evidence of the drug conspiracy prejudiced his defense of the smuggling counts by making them appear to be part of a larger criminal enterprise. These arguments are without merit.

Under Fed.R.Crim.P. 8(a), two or more offenses may be joined in the same indictment if:

> The offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or *two or more acts or transactions connected together or constituting parts of a common scheme or plan.* (*emphasis added*)

Here, the indictment clearly alleged that Cole's smuggling of aliens was a means by which the drug conspiracy acquired new Jamaican workers. More importantly, proof at trial established that after Cole helped these aliens illegally gain entry into the United States, they began to sell cocaine for the organization within one month. Thus, even in the absence of proof of an express agreement between Cole and the aliens, both the allegations in the indictment and the proof at trial were more than adequate to establish the connection between the drug conspiracy and the alien smuggling charges. Unquestionably, the smuggling counts were "related to, and . . . logically and intimately connected together with" the drug conspiracy. *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir.

---

**1.** Appellants have also raised several other issues. All appellants contend that the trial court erred in its determination under Fed.R.Evid. 609(a) in allowing the government to use two prior convictions to impeach the testimony of one of the defense witnesses. Appellant Cole maintains that the trial court erred by not requiring the jury to return a special interrogatory on the CCE count that listed the individuals which Cole organized. Cole also contends that the trial court erred in its instructions to the jury on the CCE count. Finally, Cole argues

that the alien smuggling counts of his indictment were fatally flawed and the trial court erred when it refused to grant his motion to dismiss them. We have examined each of these contentions and find them to be without merit.

**2.** Appellants also maintain that once an express agreement was not shown at trial, the trial court erred by not recognizing the counts were misjoined.

1977). Consequently, these counts come within the bounds of permissive joinder as established by Fed.R.Crim.P. 8(a). *Id.* at 1105; *United States v. Eades,* 615 F.2d 617, 624 (4th Cir.1980) *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

Even though the counts were properly joined, it does not automatically follow that they were properly tried together. Fed.R. Crim.P. 14 states in part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

■ In ruling on a request to sever, a trial court must balance any possible prejudice to the accused against the interests of the efficient administration of justice. *United States v. Jamar, supra* at 1106. The striking of this balance is within the discretion of the trial court and the "exercise of this discretion will be overturned only for clear abuse affecting substantial rights of the accused". *Id.; accord, United States v. Santoni,* 585 F.2d 667, 674 (4th Cir.1978). The appellants have failed to show such an abuse of discretion.

There is always a potential of prejudice whenever counts are joined for trial. It arises from the possibility that the jury will improperly cumulate the evidence, finding guilt on all counts where if tried separately, the evidence of each specific count standing alone would be insufficient to convict. *United States v. Carmichael,* 685 F.2d 903, 910 (4th Cir.1982); *Jamar, supra* at 1106. However, this possibility of prejudice is greatly diminished where, as in this case, the evidence of the joined crimes "would be mutually admissible for legitimate purposes in separate trials for each offense". *Jamar, supra* at 1106; *see also Carmichael, supra* at 910; *United States v. Berardi,* 675 F.2d 894 (7th Cir.1982).

■ In the present case, certainly, evidence of the presence of the drug conspiracy would be admissible under Fed.R.Evid. 404(b) to show Cole's motive and purpose for smuggling illegal aliens. Likewise, evidence of the alien smuggling would be admissible in the drug conspirators' trial to show the context, and the entire breadth and scope of the conspiracy. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980). Although not all of the evidence of each of the joined crimes would have been admissible in separate trials of the individual counts, the fact that much of it could have been properly introduced greatly mitigates any prejudice to the defendants that results from the joinder. *Jamar, supra* at 1107; *Berardi, supra* at 900-01. Similarly, because much of the evidence of these crimes would have been admissible in separate trials, the interests of judicial economy were furthered by this joint trial. Finally, the trial court gave a cautionary instruction to the jury to safeguard against the possibility of cumulation of evidence and prejudice to the defendants. *Berardi, supra* at 901. Therefore, because of the decreased likelihood of prejudice and because of the strong interest of judicial economy present, we can not say that the trial court abused its discretion by not severing these counts.

### III.

We turn next to appellants' contentions concerning Joseph Boddiford's testimony. According to Boddiford's testimony, he became suspicious when Cole agreed to his $65,000 asking price for the Exodus nightclub without asking to see any financial records of the club. Boddiford testified that he asked Cole how such a young man could afford to purchase the business and conduct extensive renovations. Cole replied that his father was a doctor in Jamaica. Boddiford responded by asking, "Come on, Stanley, aren't you a drug dealer?" Cole responded by admitting that he was a drug dealer.

Appellants do not contest the admission of this testimony on a strictly evidentiary basis. Clearly, it is admissible under Fed. R.Evid. 801(d)(2)(A) as an admission by a party-opponent. Rather, appellants con-

tend that the government was obligated under Fed.R.Crim.P. 16 to provide them with Boddiford's statement before trial. The appellants' position is that, although Cole's oral statement was not made to a government agent, it should come under the proscriptions of Rule 16 because it was a recorded statement of the defendant within the possession of the government. They claim that the government agent's notes of the interview of Boddiford, which embody Cole's remark, constitute a record of Cole's statement.

Appellants also contend that the government was obligated to disclose the statement's existence under an informal discovery agreement. They maintain that the prosecution's use of this statement at trial, without prior disclosure, unfairly surprised and prejudiced them.[3] First, we dispense with Appellant's Rule 16 argument.

Fed.R.Crim.P. 16, which outlines the parameters of criminal discovery, reads in part:

(A) Statement of Defendant. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent. . . .

Fed.R.Crim.P. 16(a)(1)(A). The appellants' expansive interpretation of Rule 16 fails to recognize that the Rule expressly prohibits discovery of the testimony of government witnesses, unless called for by the Jencks Act. Fed.R.Crim.P. 16(a)(2); *United States v. Thomas*, 609 F.Supp. 1048, 1050 (E.D.N.C.1985). We join the other circuits that have addressed this question and decline to carve an exception from this prohibition for statements of government witnesses that happen to contain statements made by a defendant.[4] Consequently, we hold that Boddiford's statement was not discoverable under Fed.R.Crim.P. 16. *See United States v. Hoffman*, 794 F.2d 1429, 1433 (9th Cir.1986); *United States v. Callahan*, 534 F.2d 763, 765 (7th Cir.) *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed. 2d 94 (1976); *United States v. Wilkerson*, 456 F.2d 57, 61 (6th Cir.) *cert. denied*, 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337

**3.** We agree with the appellants that although this is only an admission by Cole of his own guilt, the nature of this joint trial and of Cole's relationship to the other appellants dictates that any prejudice from this error would affect all of the defendants.

**4.** In addition to the Jencks Act prohibition, the connection between the defendant and the "recorded" statement is simply too tenuous to bring the statement within the ambit of Fed.R. Crim.P. 16(a)(1)(A). In *United States v. Walk*, 533 F.2d 417 (9th Cir.1975), the Ninth Circuit was faced with exactly the same factual scenario present here. In rejecting the appellant's claim that an agent's notes of a witness interview, which included a hearsay statement of a defendant, were a recorded statement of the defendant for purposes of Rule 16, the court reasoned that the "connection between the defendant and the written statements is too attenuated for the statements to be considered written statements made by the defendant." *Id.* at 418. Recognizing that the Jencks Act exclusively governs the production of government witness' statements, the court concluded that this result was consistent with the rationale underlying the Act:

> The mere fact that the witness' statement in this case contains oral "statements" attributable to the defendant in no way diminishes the recognized governmental interest in protecting the identity of the witness, and the context of the statement until the time of trial. . . . [T]o allow pretrial discovery of this statement would flout both the language and the intent of the Jencks Act.

*Id.* at 419.

We find the reasoning of the Ninth Circuit persuasive and conclude that this result best strikes the balance between protecting government witnesses and their statements and the Jencks Act guarantee of a defendant's right to use such statements for impeachment purposes. A contrary result would lead to a broad right of discovery of government witnesses' statements that would emasculate the Jencks Act in a way Congress could not have intended.

(1972); *United States v. Bronk*, 604 F.Supp. 743, (W.D.Wis.1985).

While it is clear that Boddiford's testimony was not discoverable under Rule 16, we are more troubled by the prosecution's actions in regard to the discovery agreement. Prior to trial, the appellants made a discovery motion requesting all statements made by Cole, as well as, "the substance of any written or oral conversations which made any reference whatsoever to the defendant, which the government proposes to produce as evidence at trial." The government, treating this as a request for discoverable material, responded to the motion by asserting that all such materials had been provided the defense. Consequently, the trial court did not rule on the defendants' request.

The government contends that informal discovery agreements in the Maryland United States Attorney's office only provide defendants with otherwise discoverable material at an early date. The government maintains that the statement in question was not discoverable and, therefore, not covered by the agreement.

The appellants do not contest that typical discovery agreements in Maryland cover only discoverable material. Rather, they argue that under the circumstances, they had reasonably interpreted the government's actions to mean that the government did not have any other statements by Cole, discoverable or not, which it intended to use at trial. In support of this conclusion, they point out that the pending discovery request clearly covered the statement in question, and the government responded to it by declaring the prosecution had produced all such statements. To bolster the conclusion that the government interpreted the agreement to encompass non-discoverable material, they point to the fact that the government had previously produced clearly non-discoverable investigatory reports in response to their requests. We agree with appellants that the government's actions extended this agreement to cover non-discoverable, as well as, discoverable statements.

 It is paramount that when the government enters into a pretrial discovery agreement with a criminal defendant that it abide fully and completely by that agreement. *United States v. Millet*, 559 F.2d 253, 256 (5th Cir.1977). The government's actions in this case were disingenuous at best.[5] At worst, the government's conduct shows that it may have lost sight of its proper role as prosecutor, that of a quasi-judicial officer whose first priority is to see that justice is done. It is for this reason that when a prosecutor enters into an informal discovery agreement he must abide by its spirit as well as its letter. To do otherwise would allow the means to subvert the ends of justice. Thus, we cannot condone the admission of this statement when the prosecution allowed the defendants to mistakenly believe no such statement existed. Consequently, the testimony should have been excluded under Fed.R.Evid. 403 on the grounds of unfair prejudice and surprise.

 If the government's breach of the discovery agreement had actually prejudiced the defendants, we would not hesitate to reverse these convictions. We are convinced, however, that the admission of Cole's statement was harmless error. When viewed in light of the overwhelming evidence of guilt in this case, the impact of this admission begins to pale. Cole's admission was certainly not the foundation of the government's case. The most damning testimony came from former coconspirators who laid out the workings of the organization in great detail. Government

---

**5.** The government admits that when it came into possession of Boddiford's statement, it believed that the statement might be discoverable under the informal agreement. However, the prosecution took it upon itself to determine the discoverability of the statement under Fed.R. Crim.P. 16 and then intentionally withheld the statement from the defense. But the statement's non-discoverability under the rules in no way relieved the government of its obligations under the informal agreement. Likewise, it did not change the government's earlier representation that all such statements had been turned over to the defense. It is clear that under the circumstances the government had a duty to report the statement's existence to the trial court so that its discoverability could be ruled upon through the pending motion.

agents and informants corroborated these testimonies and testified to direct sales that the organization made to them.

Our decision should not be read as a tacit indication that we do not view the prosecution's breach of the discovery agreement as serious. The nature of the government's conduct is a factor to be considered when determining the harmfulness of error. We do, nevertheless, conclude that the admission of this single statement could not reasonably be believed to have materially effected the outcome of the trial. *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Williams v. Zahradnick,* 632 F.2d 353 (4th Cir.1980).

## IV.

For the foregoing reasons, we find no error worthy of reversing these convictions. Therefore, the judgment of the trial court is affirmed.

AFFIRMED.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the affirmance of the convictions of all of the defendants except Cole. As to Cole, I respectfully dissent.

In Cole's case, I concur in all of the majority opinion except that part of part III thereof commencing at p. 976 which holds the admissibility of Cole's statement to be harmless error.

The contested statement is this:

Boddiford asked:

"Come on, Stanley, aren't you a drug dealer?"

Cole responded by admitting that he was a drug dealer.

Whatever label is put on the statement, it is in fact a confession of guilt, and I do not think that it could not be said reasonably that it had no effect on the outcome of the trial. The conduct of the government was inexcusable and should not be justified by an affirmance, I think.

I would grant Cole a new trial.