937 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David James SMITH, Defendant-Appellant.
 No. 90-5787.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1991.
Decided July 15, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CR-89-128)
 David Paul Henninger, Glass & Henninger, Towson, Md., for appellant.
 Ethan L. Bauman, Assistant United States Attorney, Baltimore, Md., (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Carmina S. Hughes, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 On January 26, 1990, after a jury trial in the United States District Court for the District of Maryland, Defendant David James Smith was convicted of Conspiracy to Commit Bank and Armored Car Robberies, Interference with Commerce by Threats of Violence, Attempted Interference with Commerce by Threats of Violence, Armed Credit Union Robbery, and three counts of Use of a Firearm in the Commission of a Crime of Violence. For these crimes, Smith was sentenced to a total of sixty-six years, eight months imprisonment. He now appeals his conviction, arguing that the district court abused its discretion when it refused to grant a severance motion and when it restricted the defense's cross-examination of a witness. Finding no merit in these issues, we affirm.
 
 I.
 
 2
 According to the testimony at trial of co-conspirator turned government witness Zachary Hood, David James Smith and Hood conspired in late 1988 and early 1989 to commit armed robberies of banks and armored vehicles. Smith and Hood had committed an armed robbery together in the late 1970s, and in November of 1988 they ran into each other and began discussing the possibility of repeat performances. Several days after their chance meeting, Hood went to Smith's apartment and there the two began planning an armored car robbery. Smith proposed to rob a specific armored car that regularly stopped at a Pepsi Cola bottling plant, but later the conspirators found this plan unworkable after "casing" the Pepsi plant.
 
 
 3
 On December 23, 1988, Smith and Hood met and decided it was a good day to rob a bank. They then went driving to look for a likely target, but what they found, instead, was an armored car. Smith and Hood followed this vehicle to a People's Drug Store, and there they forcibly robbed the armored service's employees of over $53,000 in cash. Later that same day, Smith and Hood visited a car dealership and made purchases--Smith a BMW and Hood a Mercedes.
 
 
 4
 Over the next ten weeks, the two conspirators frequently discussed other possible targets, and on March 10, 1989, they agreed to rob a credit union, The Educational Systems Employees Federal Credit Union, in Suitland, Maryland. This robbery was also successful, with the conspirators pocketing $6,886.
 
 
 5
 Flushed with their recent success, Smith and Hood decided to soon strike again. It was agreed that this time a third person, Claude Miller, would help out, and the conspirators decided to rob the same armored vehicle at the same People's Drug Store as they had on December 23. The plan was set into motion on March 20, 1989, but this time the attempt was foiled when Miller did not follow his exact instructions and the guards were alerted to possible trouble.
 
 
 6
 At trial, Smith was identified by one of the armored car guards who was present in December, another guard who was present during the March incident, and numerous employees of the credit union. Smith, testifying on his own behalf, denied committing the armored car robbery in December and the attempt in March, although he did admit to the credit union robbery. As for the car purchase, Smith explained that the money had come from Hood, who was supposedly paying off a decade-old drug debt.
 
 II.
 
 7
 During trial, Smith moved for a severance of all the counts, and this motion was denied by the Court. Smith now appeals this denial, but we find that the district court did not err or abuse its discretion.
 
 
 8
 Fed.R.Crim.P. 8(a) permits joinder of separate offenses where "the offenses charged ... are of the same or similar character or are based ... on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Here, all three robberies were part of a common scheme or plan, Smith's conspiracy with Hood. Since the initial joinder was proper, the only issue on appeal is whether the Court abused its discretion by denying the severance motion.
 
 
 9
 In ruling on a severance motion, "a trial court must balance any possible prejudice to the accused against the interests of the efficient administration of justice." United States v. Cole, 857 F.2d 971, 974 (4th Cir.1988). While the joinder of counts always creates a possibility of prejudice, this possibility "is greatly diminished where ... the evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense." Id. at 974 (citations omitted).
 
 
 10
 Here, had the conspiracy been tried separately, the independent evidence of Smith's actions in the three robberies would have been admissible to show the scope and objects of the conspiracy. Also, in separate trials on the three robberies, Hood's testimony on the conspiracy would be admissible against Smith under F.R.E. 404(b) to show motive and purpose. Likewise, in a trial on any one of the robberies, evidence of the other robberies would be admissible for purposes of corroborating Hood, assuming he testified. Finally, evidence of Smith's participation in the December armored car robbery would be admissible under Rule 404(b) to show knowledge, motive, and intent in connection with the March attempted robbery of the same car at the same location. We thus find that the district court did not abuse its discretion when it denied Smith's severance motion.
 
 III.
 
 11
 On appeal, Smith also argues that the Court erred or abused its discretion when it restricted the defense's cross-examination of Hood. Hood testified at Smith's trial pursuant to a plea agreement wherein Hood was also required to inform the authorities of all his prior criminal acts in Maryland. Following their aborted robbery attempt in March, Smith, Hood, and Miller had supposedly travelled into the District of Columbia and there committed another robbery. This crime was still being investigated at the time of the trial below.
 
 
 12
 During defense counsel's cross-examination of Hood, the witness was asked if he had made known to the government all of his prior criminal activities, and he answered, "Yes." He was then asked,
 
 
 13
 "There are no other armed robberies which you were party to which have not been disclosed[?]," and before the witness could answer, the government objected. The Court overruled the objection, but told defense counsel that he could only inquire about specific incidents of armed robbery. The question was then asked, "Isn't it a fact, Mr. Hood, you were involved in an armed robbery on March the 20th, 1989, following the aborted attempt to rob the armored car?" Again before Hood could answer, an objection was made, this time by Hood's own attorney, who was present in the courtroom. A bench conference then followed, during which the district judge, after realizing that F.R.E. 404(b) was inapplicable, began focusing his attention on F.R.E. 609, which allows for the impeachment of witnesses if they have been convicted of certain crimes. Recognizing that Hood had not yet been convicted of the District of Columbia robbery, the district court reversed its earlier ruling: "It's not a conviction so, therefore, I'm going to sustain the objection. It has to be a conviction, I'm sorry."
 
 
 14
 We find that the district court here erred, because it is F.R.E. 608(b), not 609, that is applicable in such situations. Rule 608(b) states in part, "Specific instances of the conduct of a witness ... may ... in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness...." Here the question asked of Hood about his participation in the District of Columbia robbery certainly went to Hood's truthfulness as a witness, since he had just previously admitted to telling authorities about all of his prior criminal activities. According to Rule 608(b), the Court had it within its discretion to allow or disallow such a question, but we find it to be error for the judge not to recognize that he had such discretion. Instead of articulating a cogent reason why, under Rule 608(b), he would not allow the question, the district judge instead advanced the incorrect proposition that a witness' bad acts cannot be inquired into absent a conviction.
 
 
 15
 Although we have found that the lower court erred by applying the wrong rule of evidence, this does not end our inquiry. A further question must be answered as to whether this error requires a reversal of Smith's conviction or whether it constituted mere harmless error.
 
 
 16
 The Supreme Court has held that an error is harmless if the prosecution can "prove beyond a reasonable doubt that the constitutional error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). The high Court has had an opportunity to apply this Chapman harmless error rule in a Confrontation Clause case where the defendant's opportunity to impeach a witness for bias was improperly denied. Delaware v. Van Arsdall, 475 U.S. 673 (1986). There, the Court noted:
 
 
 17
 The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
 
 
 18
 Id., at 684.
 
 
 19
 Here, had the defense been allowed to ask about the District of Columbia robbery, Hood could have answered the question in one of three ways: he could have denied any participation in the robbery, admitted such participation, or pleaded the Fifth Amendment. Had he denied involvement in the robbery, this would have ended the matter, for F.R.E. 608(b) does not allow for the attacking of a witness' credibility by use of extrinsic evidence. Had one of the latter two answers been given, it is almost certain that the government would have rehabilitated its witness on redirect. This rehabilitation would have shown that Hood's plea agreement only required him to divulge his past crimes occurring in Maryland, that the robbery in question occurred in the District of Columbia, and, presumably, that Hood understood defense counsel's initial questioning to concern only whether he had reported all of his past Maryland armed robberies. Thus, we find that the potential for damage to the government's case by this line of questioning was negligible.
 
 
 20
 The jury had before it a great amount of evidence showing Hood to be a violent, dangerous criminal. Also, Smith's attorney had an otherwise full opportunity to cross-examine Hood, and this cross-examination showed that on past occasions the witness had had no compunction about blatant lying. Yet, the jury also had before it evidence corroborating Hood's story concerning the conspiracy and Smith's role in it. Numerous employees of the credit union identified Smith, as did an armored car guard from both the December robbery and the March attempt. Also, Smith admitted participating in the credit union robbery and going to a car dealership with Hood shortly after the first robbery to purchase a BMW.
 
 
 21
 Because the jury had before it ample evidence showing Hood's mendacious and criminal character, questioning concerning the District of Columbia robbery would have added little to this evidence. Hood's testimony concerning the material issues in this case was solidly corroborated by other evidence, and the district court under F.R.E. 608(b) would have had it within its discretion not to allow such questioning. Under the circumstances, we find that the lower court's application of the wrong rule of evidence here was harmless error.
 
 
 22
 Accordingly, the disposition of the case below is
 
 
 23
 AFFIRMED.