UNITED STATES of America,

v.

Wayne Shelby SIMMONS, Defendant.

Case No. 1:15–CR–293–TSE

United States District Court,
E.D. Virginia,
**Alexandria Division.**

Signed February 9, 2016

**318**

Paul Nathanson, U.S. Attorney's Office, Alexandria, VA, for United States of America.

### ORDER

T.S. Ellis, III, United States District Judge

A seven-count indictment has issued charging defendant in the first five counts with defrauding the government and government contractors by falsely representing that he was employed by the Central Intelligence Agency ("CIA") as an Outside Paramilitary Special Operations Officer from 1973 to 2000, and charging defendant in the second two counts with defrauding a private individual by making false claims concerning a non-existent real estate investment. Defendant has filed a pre-trial motion to sever Counts 6 and 7, which relate to the real estate fraud, from Counts 1 through 5, which relate to the government and government contractor fraud (Doc. 36). As the matter has been fully briefed and argued, it is now ripe for disposition.

### I.

The pertinent facts and charges as set forth in the seven-count indictment may be succinctly summarized.

Count 1 of the Indictment charges defendant with making false material statements on security clearance forms submitted to the government in 2009 in connection with his attempt to obtain employment with government contractor Triple Canopy, in violation of 18 U.S.C. § 1001. Specifically, the Indictment alleges that defendant made statements on these security clearance forms falsely claiming that he was previously employed as an Outside paramilitary Special Operations Officer for the CIA from 1973 to 2000.

Count 2 charges defendant with defrauding the government by making false material statements in order to obtain work, in violation of 18 U.S.C. §§ 1031, 1032. Specifically, the Indictment alleges that while employed with government contractor BAE Systems in 2008–09, defendant made false material statements regarding his past employment with the CIA in order to obtain work as a team leader in the United States Army's Human Terrain System (HTS) program. The Indictment further alleges that as a result of these material false statements, defendant received an interim secret security clearance and began, but never completed, an HTS

training program at Fort Leavenworth, Kansas.

Count 3 charges defendant with defrauding the government by making false material statements to obtain work as a senior intelligence advisor on the International Security Assistance Force's (ISAF) Counterinsurgency Advisory and Assistance Team (CAAT), in violation of U.S.C. §§ 1031, 1032. Specifically, the Indictment alleges that in 2010, defendant obtained work as a subcontractor to Drop Test International (DTI), which was itself a subcontractor to Jorge Scientific Corporation ("Jorge Scientific"); both DTI and Jorge Scientific were tasked by the government to supply appropriate personnel for the CAAT. The Indictment further alleges that in defendant's capacity as an ISAF senior intelligence advisor, defendant was given an interim security clearance and deployed to ISAF headquarters in Kabul, Afghanistan.[1]

Counts 4 and 5 charge defendant with wire fraud, in violation of 18 U.S.C. § 1343, for knowingly devising and intending to devise a scheme and artifice to defraud Company C to obtain money from Company C by means of materially false and fraudulent pretenses, representations, and promises. Specifically, the Indictment alleges that defendant falsely represented to Company C that he had worked in various capacities in the U.S. Army's HTS program from 2008 to 2009 and for the CIA from 1973 to 2000. The Indictment further alleges that in connection with this scheme to defraud, defendant knowingly caused to be transmitted by means of wire communication in interstate commerce two email communications, one dated May 18, 2010, and one dated May 28, 2010, from Company C in Maryland to Company B

within the Eastern District of Virginia; both emails allegedly contain invoices related to defendant's services for Company C.

Counts 6 and 7 charge defendant with wire fraud, in violation of 18 U.S.C. § 1343, for defrauding a private individual, victim E.L., in 2011 in connection with a non-existent real estate investment. Specifically, the Indictment alleges that defendant made false material statements to E.L. that defendant was involved in real estate investment projects and allegedly convinced E.L. to invest $125,000 in a non-existent real estate investment. The Indictment alleges that defendant used the invested funds for personal purposes. The Indictment further alleges that in the course of convincing E.L. to invest the money in the non-existent real estate opportunity, defendant made false statements regarding his career with the CIA to bolster his credibility with E.L. As a result of defendant's false statements, the Indictment alleges that defendant knowingly caused to be transmitted by means of wire communication in interstate commerce two wire transfers, one on November 27, 2011, for $75,000 and one on December 5, 2011, for $50,000, from E.L.'s bank account within the Eastern District of Virginia to defendant's bank account outside Virginia.

Defendant has filed a motion to sever Counts 6 and 7 of the Indictment from Counts 1 through 5 on the following grounds: (i) Counts 6 and 7 are not properly joined with Counts 1 through 5 pursuant to Rule 8(a), Fed. R. Crim. P; and (ii) even if those counts are properly joined, severance is appropriate here pursuant to Rule 14(a), Fed. R. Crim. P.

---

1. The government notes in its response to defendant's motion to sever that after a short time in Afghanistan, defendant's security

clearance was revoked, and he was sent back to the United States.

## II.

Analysis properly begins by considering whether Counts 6 and 7 are properly joined with Counts 1 through 5 pursuant to Rule 8(a), Fed. R. Crim. P., which provides that an indictment may "charge a defendant in separate counts with 2 or more offenses if the offenses charged": (i) "are of the same or similar character"; (ii) "are based on the same act or transaction"; or (iii) "are connected with or constitute parts of a common scheme or plan."

As the Fourth Circuit has repeatedly made clear, "Rule 8(a) 'permit[s] very broad joinder' because of the efficiency in trying the defendant on related counts in the same trial." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir.2005) (quoting *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir.2003)). In this regard, "joinder is the 'rule rather the exception,'" *United States v. Mir.*, 525 F.3d 351, 357 (4th Cir.2008) (quoting *United States v. Acker*, 52 F.3d 509, 514 (4th Cir.1995)). Of particular importance here, the Fourth Circuit has noted that "violations of the same statute" are "an unremarkable example of offenses of the 'same or similar character'" under Rule 8(a). *United States v. Hawkins*, 776 F.3d 200 (4th Cir. 2015).

■ Here, Counts 6 and 7 are properly joined with Counts 1 through 5 pursuant to Rule 8(a) because the two sets of charges are clearly "of the same or similar character," Fed.R.Crim.P. This is so because Counts 6 and 7 charge defendant with wire fraud, in violation of 18 U.S.C. § 1343, which is the same offense charged in Counts 4 and 5 and similar to the offense charged in Counts 2 and 3, namely major fraud against the United States in violation of 18 U.S.C. § 1031. With respect to Counts 6 and 7 and Counts 4 and 5, these two sets of charges under the same statute are an "unremarkable example of offenses of the 'same or similar character.'" *Hawkins*, 776 F.3d 200, 208. Moreover, as the government correctly points out, the factual allegations in the two groups of charges confirm that they are of the same or similar character. Both Counts 4 and 5, on the one hand, and Counts 6 and 7, on the other hand, charge defendant with defrauding a private party, and both sets of charges include allegations that defendant made false representations about his prior employment with the CIA.

## III.

■ Even though Counts 6 and 7 are properly joined with Counts 1 through 5 under Rule 8(a), severance may still be appropriate pursuant to Rule 14(a), Fed. R.Crim.P., which provides that "[i]f the joinder of offenses ... for trial appears to prejudice a defendant ..., the court may order separate trials of counts...." As the Fourth Circuit has made clear, Rule 14(a) "contemplates that joinder under Rule 8(a) can be proper and, at the same time, severance can be required." *Cardwell*, 433 F.3d at 387. Importantly, however, the Supreme Court has instructed that when joinder is appropriate under Rule 8, "a district court should grant a severance under Rule 14 *only* if" the defendant can establish that "there is a serious risk that a joint trial would ... prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).[2] Nor are generalized allegations of undue

---

**2.** Although the Supreme Court's decision in *Zafiro* addressed the joinder of defendants rather than the joinder offenses, the analysis for joinder of defendants is identical to the analysis for joinder of offenses under Rule 14, Fed. R. Crim. P.

prejudice sufficient to warrant severance; rather, the defendant "must establish that actual prejudice would result from a joint trial, and not merely that a separate trial would offer a better chance of acquittal." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir.1995) (citation, alteration, and internal quotation marks omitted). Ultimately, the decision to sever is one within the broad discretion of the district court, *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933, which "must balance any possible prejudice to the accused against the interest of the efficient administration of justice." *United States v. Cole*, 857 F.2d 971, 974 (4th Cir.1988). In this regard, the Fourth Circuit has instructed that where, as here, "offenses are joined pursuant to Rule 8(a) based upon their 'same or similar character,' [a] trial court should consider three possible sources of prejudice":

> (i) " 'the jury may confuse and cumulate the evidence and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated' ";
>
> (ii) " 'the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other' "; or
>
> (iii) " 'the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.' "

*United States v. Taylor*, 218 Fed.Appx. 249, 250 (4th Cir.2007) (quoting *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir.1976)). In sum, therefore, where, as here, counts are properly joined under Rule 8, severance under Rule 14 is appropriate only if defendant has established (i) a serious risk that actual prejudice would result from a joint trial, and (ii) the risk of actual prejudice outweighs the interest in efficient administration of justice.

■ These principles applied here point persuasively to the conclusion that severance of Counts 6 and 7 from Counts 1 through 5 pursuant to Rule 14(a) is appropriate. Specifically, defendant has established that " 'there is a serious risk that the jury may confuse and cumulate the evidence and convict the defendant of' " the charges related to real estate fraud and the charges related to government and government contractor fraud " 'when it would not convict him of either [set of charges] if it could keep the evidence properly segregated,' " and that there is a serious risk that " 'the jury may conclude that the defendant is guilty of' " Counts 1 through 5 " 'and then find him guilty of' " Counts 6 and 7 " 'because of his criminal disposition.' " *Taylor*, 218 Fed.Appx. at 250 (quoting *Foutz*, 540 F.2d at 736).

This is so because the crux of Counts 1 through 5 is fraud on the government and government contractors on the basis of defendant's allegedly false claims regarding CIA employment, whereas, the completely different crux of Counts 6 and 7 is fraud on a private individual on the basis of defendant's allegedly false statements regarding a non-existent real estate investment. In this regard, trials on each of these two sets of charges will require the government to present evidence that, if presented to a jury to determine defendant's guilt or innocence with respect to one set of charges, will create a serious risk of prejudice to defendant with respect to the other set of charges. Specifically, based on discovery provided by the government, a trial on Counts 1 through 5 will likely include evidence from high profile figures, such as former four-star General Stanley McChrystal and former Secretary of Defense Donald Rumsfeld relating to serious allegations that defendant made false representations to the government and government contractors regarding de-

fendant's involvement with the CIA. The inclusion of this evidence in a trial relating to the real estate fraud alleged in Counts 6 and 7 creates a serious risk that jurors who have heard the testimony of high-ranking government officials, and concluded from that testimony that defendant is guilty of Charges 1 through 5, will be unable to make a fair, unbiased assessment as to whether defendant committed real estate fraud. Put differently, there is a serious risk of prejudice insofar as jurors convinced by highranking government officials that defendant is guilty of serious crimes that pose a threat to national security will be primed to find the same defendant guilty of an unrelated, real estate investment fraud.

By the same token, evidence concerning false statements to a private individual victim about a non-existent real estate investment opportunity could spillover and affect the jury's assessment of allegations in Counts 1 through 5, which do not involve private individual victims, but government officials and government contractors. Thus, a joint trial on Counts 1 through 5 and Counts 6 and 7 presents a serious risk that a jury would be prevented "from making a reliable judgment about guilt or innocence" with respect to each of the two sets of charges. *Cardwell*, 433 F.3d at 387.

Importantly, however, the conclusion that a joint trial poses a serious risk of actual prejudice does not end the analysis. Severance is appropriate only if the risk of actual prejudice outweighs the interest in efficient administration justice. In this regard, the government contends that the risk of prejudice does not outweigh the cost that severance would impose on judicial economy because Counts 1 through 5 and Counts 6 and 7 will require some overlapping evidence. Specifically, the government contends that the two sets of

charges will require overlapping evidence insofar as (i) in support of Counts 1 through 5, the government must present evidence that defendant made false statements concerning his affiliation with the CIA; and (ii) in support of Counts 6 and 7, the government intends to present evidence that defendant made false representations to E.L. that defendant was a former CIA agent in order to bolster his credibility. In order to determine whether there will be overlapping evidence and, if so, whether the overlap will be slight or significant, it is useful to describe what exactly must be proved by the government for a conviction on each set of charges.

■ As already noted, Counts 6 and 7 and Counts 4 and 5 all allege violations of the wire fraud statute, which punishes anyone who "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire," a communication "for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. As the Fourth Circuit has made clear, to convict a person of wire fraud, "the government must show that the defendant (1) devised or intended to devise a scheme to defraud and (2) used ... wire communications in furtherance of the scheme." *United States v. Wynn*, 684 F.3d 473 (2012). Moreover, as the Supreme Court has elucidated, the element "to defraud" has "the common understanding of wronging one in his property rights by dishonest methods or schemes and usually signify[ing] the deprivation of something of value by trick, deceit, chicane, or overreaching." *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In this regard, as the Fourth Circuit has consistently confirmed, the false statements alleged must be

"about a material fact." *Wynn*, 684 F.3d at 478.

Here, importantly, the "scheme to defraud" charged in Counts 6 and 7 is different from the "scheme to defraud" charged in Counts 4 and 5. Specifically, the heart of the fraud alleged in Counts 6 and 7 are false representations concerning an allegedly non-existent real estate investment, whereas the heart of the fraud alleged in Counts 4 and 5 are false representations concerning defendant's affiliation with the CIA. Moreover, the heart of the fraud alleged in Counts 1 through 3, which are not charges of wire fraud, are also false representations concerning defendant's affiliation with the CIA. Accordingly, the bulk of evidence that will be offered in support of Counts 1 through 5 will be different from the bulk of evidence offered in support of Counts 6 and 7. Indeed, the only possible overlap in evidence the government forecasts stems from the allegation that defendant made false representations to E.L. that defendant was a former CIA agent in order to bolster his credibility in committing the real estate fraud charged in Counts 6 and 7. Yet, it is not clear at this time whether all or any of this evidence will be admissible with respect to Counts 6 and 7, as it is difficult to predict whether allegedly false statements concerning defendant's CIA affiliation will be material or relevant with respect to the real estate fraud. Indeed, the allegation that defendant's statements concerning his CIA affiliation bolstered his credibility is akin to an allegation that a used car salesman's attempt to bolster his credibility

when making false statements to a buyer concerning a used car "lemon" by saying, "trust me, I used to be a cardiologist." This albeit imperfect analogy illustrates that it is difficult to see that statements regarding a past, unrelated career will turn out to be relevant or material to real estate investment fraud.

In any event, at this stage, the relevance and materiality of defendant's allegedly false statements concerning his past CIA employment need not—and perhaps cannot—be decided here.[3] Yet, even assuming that the government will be permitted pursuant to Rule 402, Fed. R. Evid., to present evidence related to the allegation that defendant made false representations concerning his CIA affiliation to bolster his credibility, the admissible evidence related to those false representations will likely be significantly narrower in scope than the evidence that will be admitted with respect to defendant's statements regarding his affiliation with the CIA in support of Counts 1 through 5. This is so because the extent to which such evidence would be permitted with respect to Counts 6 and 7 would be limited by the calculus prescribed by Rule 403, Fed. R. Evid. In this regard, much of the testimony of former four-star General Stanley McChrystal and former Secretary of Defense Donald Rumsfeld relating to serious allegations of fraud against the government and government contractors might well be inadmissible on Rule 403 grounds.

In sum, at this time it appears there may well be little possible overlap in evidence that will be presented in support of

**3.** For example, if E.L. were to testify that defendant's statements concerning his prior CIA employment played no role in her decision to invest money in the purported real estate opportunity, then much of the evidence concerning defendant's false statements regarding his CIA employment would be inadmissible on relevancy grounds pursuant to Rule 402, Fed. R. Evid. Moreover, even if E.L. were to testify that defendant's statements concerning his affiliation with the CIA played a role in her decision to invest money, Rule 403, Fed. R. Evid., may well limit the evidence that can be admitted to prove the falsity of defendant's statements concerning his prior CIA employment.

the two sets of charges—Counts 1 through 5 and Counts 6 and 7. Thus, where, as here, "the overlap between the [two sets of charges], in terms of evidence to be presented at trial seems slight, the concerns of judicial economy balance lightly against the dangers of jury confusion and conviction based on propensity evidence." *United States v. Buchanan,* 930 F.Supp. 657, 668 (D.Mass.1996); *see also United States v. Gunn,* 968 F.Supp. 1089, 1095 (E.D.Va. 1997) ("[W]hile judicial economy would be somewhat impaired if the instant motion to sever were granted, the likelihood of prejudice to [the defendant] if this motion were denied would be much greater."). Put differently, the slight possible overlap in evidence imposes a small cost, if any, on judicial economy, and that small costs pales in comparison to the likelihood of prejudice to defendant that would result if Counts 6 and 7 were not severed from Counts 1 through 5.

It is worth noting, moreover, that the purpose for which the government seeks to introduce evidence relating to defendant's alleged misrepresentations to the real estate fraud victim defendant's supposed CIA career—to show that these representations bolstered the victim's perception of defendant's credibility—illustrates why severance is appropriate here: Just as a fraudster's statements regarding his career accomplishments may make him more credible in the eyes of an individual victim, so, too, will evidence of fraudulent activity with respect to matters of national security make a defendant appear, in the eyes of a jury, more likely to have committed an unrelated crime, especially when such evidence includes the testimony of highranking government officials whose own illustrious careers will likely bolster their credibility.

Thus, pursuant to Rule 14(a), Counts 6 and 7 must be severed from Counts 1 through 5 because defendant has established a serious risk of actual prejudice that outweighs the relatively insubstantial cost "to the efficient administration of justice." *Cole,* 857 F.2d at 974.

### IV.

Accordingly, for good cause, and for the reasons stated here,

It is hereby **ORDERED** that defendant's motion to sever is **GRANTED** insofar as Counts 6 and 7 are **SEVERED** from Counts 1 through 5.

The Clerk is directed to send a copy of this Order to all counsel of record.