**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4576

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

COLLIN HAWKINS,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Andre M. Davis, District Judge. (1:06-cr-00583-AMD-1)

Argued: September 25, 2009          Decided: December 18, 2009

Amended: January 13, 2015

Before MOTZ and AGEE, Circuit Judges, and Mark S. DAVIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Agee wrote the opinion, in which Judge Davis joined. Judge Motz wrote an opinion concurring in the judgment.

**ARGUED:** Sicilia Englert, LAWLOR & ENGLERT, LLC, Greenbelt, Maryland, for Appellant. Solette Allison Magnelli, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Michael E. Lawlor, LAWLOR & ENGLERT, LLC, Greenbelt, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Jason Weinstein, Assistant United States Attorney,

OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

———————————

AGEE, Circuit Judge:

Collin Hawkins was indicted on separate counts related to a carjacking and a subsequent arrest as a felon in possession of a firearm. Prior to trial, Hawkins timely moved the court to sever the carjacking counts from the felon in possession charge on the grounds of improper joinder. The district court denied the motion and Hawkins was found guilty by a jury on all counts. For the reasons that follow, we affirm the judgment of the district court, in part, and vacate the judgment, in part.

I.

Reuben King ("King") testified that on the evening of November 22, 2006, he was employed as a driver for Sedan Service in Baltimore, Maryland. That night, King received a phone call from a regular customer he knew as Warren, asking to be picked up at an apartment complex parking lot. When King arrived three persons entered his cab: Warren, the appellant Hawkins, and an unidentified female. At trial, King testified that he instantly recognized Hawkins, who sat next to him on the cab's front seat, from casual contact in the neighborhood over many years.

Warren instructed King that he needed to make three stops that night. During the first two stops, King explained that Warren got out of the car, talked to unidentified individuals for roughly ten to fifteen minutes, returned to the car, and

3

then told King the intersection for the next stop. During the last stop, both Warren and Hawkins got out of the car for about ten or fifteen minutes, and then returned. Warren then instructed King to return to the apartment complex parking lot.

Once back in the parking lot King turned on the overhead dome light to calculate the fare and saw Hawkins holding a .357 caliber revolver only a few inches from his head, while Warren held a shotgun positioned to the back of King's head. According to King, Warren stated that if King moved, Warren would shoot him. King claimed that Hawkins then took two cell phones and roughly $400 in cash from him, and pushed King out of the driver's side door. Hawkins then pushed King in the direction of the trunk, during which time Hawkins emptied the remainder of King's pockets while Warren kept the shotgun pointed at King. Once they reached the trunk area, King testified that Hawkins told King to kneel down and keep his hands up. According to King, after he complied with the instruction, Hawkins then stated, "I'm not going to shoot you 'cause I know you." J.A. 108.

King claimed he then heard footsteps going toward the car, the car doors closing, and the car pulling off. King testified that he then ran until he found police officers to whom he reported the carjacking.

4

Shortly thereafter, King gave information about the carjacking to detectives and told them that Hawkins was involved. When shown a photo array King identified Hawkins as one of the perpetrators.

On December 9, 2006, Baltimore City police officers were investigating an unrelated incident in the same area of Baltimore, which they had reason to believe involved Hawkins. Acting on information that Hawkins would be arriving at a convenience store officers watched Hawkins approach the entrance of the store and tug at his waistband, indicating that he might be armed.

Officers entered the store and ordered Hawkins to the ground, but he refused to comply and started to slide his right hand up under his waistband. This caused officers to order Hawkins to keep his hands where they could be seen, but Hawkins refused to comply until he was physically subdued. A .9 millimeter pistol was retrieved from Hawkins' waistband when he was arrested.

On March 7, 2007, a federal grand jury in the District of Maryland indicted Hawkins on four counts. Count I alleged a carjacking based on the robbery of King's vehicle, in violation of 18 U.S.C. § 2119 (2000). Count II alleged that Hawkins "did knowingly possess and brandish a firearm in furtherance of a crime of violence," the carjacking, in violation of 18 U.S.C. §

924(c)(1)(A)(ii).  J.A. 7.  Count III alleged that Hawkins, "having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a loaded firearm, to wit:  a Bersa model Thunder 9 mm pistol" in violation of 18 U.S.C. § 922(g)(1), the gun seized when he was arrested.  J.A. 8.  Count IV alleged another felon in possession of a firearm charge, relating to a shotgun seized during a search of Hawkins' residence.

Prior to trial, Hawkins moved to sever Counts I and II (collectively the "carjacking counts") from Counts III and IV. Hawkins contended that Counts III and IV were improperly joined to Counts I and II under Federal Rule of Criminal Procedure 8(a).  J.A. 10.  In the alternative, Hawkins argued severance was appropriate under Rule 14 because he "would be significantly prejudiced by a single trial" because "the jury may well conclude that Hawkins is guilty of one firearm count and then find him guilty of the others because of his criminal disposition." J.A. 13.  The district court denied Hawkins' motion because it could "discern no reason why a jury will not be able fairly and objectively to evaluate the evidence."[1]  J.A. 58.

---

[1] Hawkins renewed his motion to sever Counts I and II from Count III at trial upon the conclusion of the Government's evidence and again at the conclusion of the trial.  The motions were denied.

6

The Government elected not to proceed on Count IV and trial was held only on Counts I, II, and III. Hawkins pled not guilty to all three counts. However, as to Count III, Hawkins conceded his prior felony conviction and his possession of the .9 millimeter handgun at the time of his arrest both to the court prior to opening statements and again to the jury during opening statements.[2]

During the trial, the Government introduced portions of a transcript and tape recording from Hawkins' post arrest interview for possession of the .9 millimeter pistol at issue in Count III. However, the transcript and tape recording also contained two additional admissions Hawkins asked be redacted before publication to the jury.

First, Hawkins admitted during the interview that he supported himself by gambling and selling drugs. Hawkins objected to the admission of this statement based on lack of relevance to any contested issue in the case because he had, in effect, conceded his guilt as to Count III. Hawkins also argued that the statement constituted evidence of other crimes under Federal Rule of Evidence 404(b), and that the prejudice of the

---

[2] The government later introduced an exhibit with Hawkins' stipulations as to Count III. In it, he stipulated to his prior felony conviction, to the fact that he had not been pardoned for that felony nor had his civil rights restored, and finally, to the fact that the parties agreed to admit the stipulation into evidence to be read to the jury.

statement significantly outweighed the probative value, if any, the statement might have. The district court denied Hawkins's motion to suppress the statement:

> COURT: It makes it more likely, assuming Warren is selling drugs, assuming that somebody known to Mr. King as Warren was actually in that vehicle on November 22nd and went to east Baltimore and made these three stops that have been described, assuming all of that, then as you yourself have suggested to the jury, it tends to suggest that Warren is a drug dealer.
>
> DEFENSE COUNSEL: But Your Honor –
>
> COURT: Just let me finish. And so if, in fact, some guy with Warren on November 22, 2006, got in Mr. King's vehicle and went to these three stops and came back to the parking lot, then that makes it more likely that the person who did that was also a drug dealer. I mean it ties it up. It's not irrelevant. It's not irrelevant. The question of whether Mr. Hawkins was in that vehicle on November 22nd, 2006, is made more likely true, his presence in the vehicle is more likely true if he's a drug dealer.

J.A. 223. The district court then stated, "The fact that Mr. Hawkins is willing to admit that he sells drugs is clearly relevant to the charges in Counts One and Two. Clearly. Unmistakably." J.A. 224. Furthermore, the district court determined that the probative value of Hawkins' statement substantially outweighed any undue prejudice:

> COURT: I don't see any prejudice in having the jury know from Mr. Hawkins's interview that he sells drugs in east Baltimore. The relevance of that admission is extraordinary. . . . Its relevance is manifest, and its probative value is significant because, as I just said, Mr. Hawkins, even by his not guilty plea, actually denies being in the car on November 22nd.

8

And his admission that he's a drug dealer, coupled with the evidence that whoever was in the car probably was or certainly could have been a drug dealer, really ties him to the car in a way that no other evidence in this case does.

J.A. 225. Additionally, the court found that even under Rule 404(b), the statement was admissible because it was evidence of Hawkins' identity as one of the persons in the car with Warren.

Second, Hawkins objected to the admission of his separate statement during the interview that he stole the .9 millimeter pistol found on him when arrested from his cousin: "If this is about the gun, it's not my gun, it's my buddy's gun. He doesn't know I have it and the bullets that are in it are mine. I took my buddy's bullets out." J.A. 219. Hawkins argued that the statement was irrelevant because he had conceded that he possessed the gun. Additionally, Hawkins contended that the statement was unduly prejudicial and evidence of other crimes to prove Hawkins's conformity therewith in violation of Rule 404(b). The district court disagreed:

> COURT: This is very interesting because it clearly suggests that if he's willing to steal his cousin's gun, he's willing to steal anything from anybody. If he's willing to steal his cousin's gun, why wouldn't he be willing to steal money? His cousin's gun, why wouldn't be he be willing [to] steal a car or cash or cell phones from some guy he just knows casually from the neighborhood?

J.A. 229–30. In response, Hawkins's attorney stated:

> DEFENSE COUNSEL: That's exactly why we think it's not admissible, Your Honor. You're sort of making my

9

point. If he's willing to steal from his cousin, you're telling the jury, look, what a bad guy he is.

J.A. 230. The district court denied Hawkins' motion to redact the statement from the interview transcript or withhold that part of the recording from the jury.

Hawkins' counsel actively cross-examined King and elicited various inconsistencies from his testimony on direct examination.

During closing argument, counsel for the Government mentioned that the carjacking was not the first time Hawkins had committed a crime against a person he knew, stating, "You heard yesterday the defendant admitted to police that he stole the 9 millimeter he was caught with on December 9th from his cousin." J.A. 272. While the Government acknowledged that Hawkins had conceded his guilt to the felon-in-possession charge, it argued to the jury that it was a tactical admission:

> U.S. ATTORNEY: Now, why would the defendant rob someone he knew? Well, as I indicated, this was not the first time he did that. He robbed, stole a gun from [his] cousin around December 9th.

J.A. 273. These statements prompted Hawkins to move for a mistrial maintaining that the Government was attempting to persuade the jury to conclude Hawkins committed the carjacking based on the fact that he robbed his own cousin. The district court denied the motion.

10

During the Government's rebuttal closing argument, counsel again mentioned that Hawkins had admitted to stealing the gun from his cousin. Hawkins again moved for a mistrial, contending that the statement violated Rule 404(b)'s prohibition on the use of propensity evidence. The district court denied the motion and the case was submitted to the jury.

The jury found Hawkins guilty on all three counts. The district court sentenced Hawkins to 180 months for Count I, 120 months for Count II, and 120 months for Count III, for an aggregate term of incarceration of 360 months followed by three years of supervised release. Hawkins noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (2006).

II.

Hawkins raises two primary issues on appeal. First, he contends that the district court erred in denying his motion to sever Counts I and II from Count III because Count III was improperly joined with Counts I and II under Rule 8.[3]

---

[3] Hawkins does not argue on brief that he was harmed by the joinder as to Count III. Moreover, at oral argument he conceded that he was not contesting his conviction on Count III. Therefore, we will consider the issue abandoned and will affirm the conviction on Count III. See 11126 Baltimore Boulevard, Inc. v. Prince George's County, Md., 58 F.3d 988, 993 n. 7 (4th Cir. 1995) (en banc). Hawkins does contend he is entitled to resentencing on Count III because his sentence on that count was calculated in conjunction with and in reliance on the convictions for Counts I and II.

11

Alternatively, Hawkins argues that if all three counts were properly joined for a single trial, the district court abused its discretion in denying his motion to sever under Rule 14 because the joinder of Count III with Counts I and II was unduly prejudicial. Hawkins separately argues that the district court erred in admitting into evidence the two statements he made during his post-arrest interview.

## III.

Whether charges are properly joined in an indictment is a question of law that we review de novo. See United States v. Cardwell, 433 F.3d 378, 384–85 (4th Cir. 2005). "If the initial joinder was not proper, however, we review this nonconstitutional error for harmlessness, and reverse unless the misjoinder resulted in no 'actual prejudice' to the defendant[] 'because it had [no] substantial and injurious effect or influence in determining the jury's verdict.'" United States v. Mackins, 315 F.3d 399, 412 (4th Cir. 2003) (quoting United States v. Lane, 474 U.S. 438, 449 (1986)). If misjoinder is found, the Government bears the burden of demonstrating that any error resulting from the misjoinder was harmless. Mackins, 315 F.3d at 412.

A.

Federal Rule of Criminal Procedure 8(a) provides:

Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). Rule 8(a) permits "very broad joinder," Mackins, 315 F.3d at 412 (quoting 1A Charles Alan Wright, Federal Practice & Procedure § 141 (3d ed. 1999)), "because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding." United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008). Thus, joinder is the "rule rather than the exception," United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980) (quoted favorably in United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995)), "because of the efficiency in trying the defendant on related counts in the same trial." Cardwell, 433 F.3d at 385.

The requirements of Rule 8(a), however, "'are not infinitely elastic,'" Mackins, 315 F.3d at 412 (quoting United States v. Randazzo, 80 F.3d 623, 627 (1st Cir. 1996)), "and so 'cannot be stretched to cover offenses . . . which are discrete and dissimilar.'" Id. at 412 (quoting United States v. Richardson, 161 F.3d 728, 733 (D.C. Cir. 1998)). Joinder of

13

unrelated charges "create[s] the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense." Cardwell, 433 F.3d at 385; see also Bruton v. United States, 391 U.S. 123, 131 n.6 (1968) ("An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence.").

In this case, the Government contends that the carjacking counts and possession of a firearm by a felon (Count III) are all offenses of the "same or similar character." The Government did not argue on brief, nor provide a rationale at oral argument, that joinder was proper either because the counts "are based on the same act" or "constitute parts of a common scheme or plan." Our review of the record substantiates the lack of a nexus between the carjacking counts and Count III which would reflect the charges to be the "same act" or a "common scheme or plan." Thus joinder rises and falls on whether Counts I and II are of a "same or similar character" to Count III.

Joinder of offenses that "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan" presents the opportunity to submit evidence of one offense that ordinarily would be admissible at a separate trial for the other. United States v. Foutz, 540 F.3d 733, 737 (4th Cir.

14

1976); see also United States v. Carmichael, 685 F.2d 903, 910 (4th Cir. 1982) (determining that evidence of charges joined because they were part of the same series of acts or transactions would have been mutually admissible had defendants enjoyed separate trials on the charges).  However, when offenses are joined based on their same or similar character, "admissibility at separate trials is not so clear."  Foutz, 540 F.3d at 737.

Hawkins admits that Counts I and II are properly joined because "they both related to the same carjacking that occurred on November 22, 200[6]."  However, Hawkins argues that Count III "was entirely unrelated" to Counts I and II, in part because the felon-in-possession count "arose out of a distinct incident unrelated to the carjacking" and occurred seventeen days later.  Hawkins emphasizes that there is no link between the carjacking counts and Count III because the handgun the police recovered from Hawkins' person on December 9 was not the same gun used in the carjacking.  The fact that the carjacking and felon in possession counts involve different firearms is not contested by the Government.

The Government contends that all three counts were properly joined as offenses of the "same or similar character" for two reasons: first, because "all three were firearms offenses" and second, because "all these events occurred within a three-week

15

period." Br. of Appellee at 12. In support of its argument, the government cites, inter alia, United States v. Cole, 857 F.2d 971 (4th Cir. 1988), and United States v. Rousseau, 257 F.3d 925 (9th Cir. 2001). These decisions, however, provide no help to the Government in this case.

In Cole, we held proper the joinder of various drug charges stemming from a large-scale cocaine distribution ring with the defendant's alien smuggling charges where the aliens smuggled into the country began to sell cocaine for his distribution ring after their arrival. Cole, 857 F.2d at 973. We stated in Cole that "both the allegations in the indictment and the proof at trial were more than adequate to establish the connection between the drug conspiracy and the alien smuggling charges. Unquestionably, the smuggling counts were 'related to, and . . . logically and intimately connected together with' the drug conspiracy." Id. at 973 (quoting United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir. 1977)). The Government alleges that this "analogous" case supports its argument because in Cole, we found "some connection" between the counts, and in balancing the possible prejudice in trying the counts together against the possible prejudice to the defendants, we found that the balance "tilted in favor of a joint trial." Br. of Appellee at 13.

However, the Government's argument fails to appreciate the extent of the connection we found in Cole. In Cole, the

16

smuggled aliens worked in the drug distribution ring once they arrived in America. In effect, drug profits subsidized the illegal smuggling of aliens who, in turn, went to work in the drug conspiracy to generate further drug profits for the defendants. Indeed, there existed a logical and intimate connection between the offenses which made joinder proper.

There was not just "some connection" between the counts in Cole; instead, it was a strong connection. However, in the case at bar, the Government has proffered no evidence demonstrating a logical and close connection between the alleged carjacking and possession of a .357 caliber revolver on November 22, and Hawkins' possession of a .9 millimeter pistol on December 9.

Similarly, the Government's reliance on Rousseau is misplaced. In Rousseau, the defendant was charged with two counts of possession of a firearm by a convicted felon, although each arrest related to a different firearm. Rousseau, 257 F.3d at 929. Prior to trial, Rousseau moved to sever the two felon-in-possession counts, but the court denied the motion. Id. Based only upon its review of the face of the indictment,[4] the

---

[4] As we stated in Cardwell, "[w]hen the Government does not proffer evidence tending to show a relationship between the charged crimes at a pre-trial hearing on a motion to sever, . . . we examine compliance with Rule 8(a) by looking to the allegations in the indictment and the evidence produced at trial." Cardwell, 433 F.3d at 385. This view is in tension with cases from other circuits holding that the propriety of joinder is to be based on the indictment alone. For example, in

17

Ninth Circuit found that both "incidents involved firearms charges," specifically felon-in-possession charges. Id. at 932. Thus, the two offenses were of a "same or similar character." Id.

The circumstances in Rousseau are easily distinguishable from the circumstances in the present case. In Rousseau, the defendant was charged with two counts of violating the same statute, 18 U.S.C. § 922(g)(1), although the offenses occurred nearly six and a half months apart and the guns were different. But it is an unremarkable example of offenses of the "same or similar character" when the defendant is charged only with multiple violations of the same statute. See Acker, 52 F.3d at 514 ("Trial courts routinely allow joinder of different bank robbery counts against a single defendant in the same indictment.").

In the present case, however, Hawkins was charged with three different offenses: carjacking and possession of a firearm in furtherance of a crime of violence, and, about three

the Ninth Circuit, district courts examine only those allegations in the indictment to determine the propriety of joinder. See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995). However, we believe that "[o]ur rule has the benefit of a built-in type of harmlessness review; if the indictment does not allege a sufficient relationship for Rule 8(a) purposes, but the evidence at trial reveals that such a relationship exists, it is difficult to see how the defendant could ever be prejudiced by the technical misjoinder." Cardwell, 433 F.3d at 386 n.1.

18

weeks later, being a felon in possession of a different firearm. We perceive no similarity in the connection between these three different counts and the counts on the same offense found appropriate for joinder by the Ninth Circuit in Rousseau.

In contrast to Cole and Rousseau, we do find persuasive the Fifth Circuit's analysis in United States v. Holloway, 1 F.3d 307, 310–11 (5th Cir. 1993), which held joinder improper on a factual scenario very similar to that in the case at bar. In Holloway, the defendant was tried on separate counts for robbery and being a felon in possession of a firearm although the arrest on the later charge came two months after the alleged robbery. The Government argued joinder was proper because the offenses were of the "same or similar character." However, the Fifth Circuit noted

> that on the face of the indictment there is no indication that a connection exists between his possession of the weapon and the alleged robbery conspiracy. Furthermore, there is no allegation that he had planned to use the weapon in a robbery, had used the weapon in a robbery, or that the weapon was in any way connected to the charged robberies or to any robbery.

Holloway, 1 F.3d at 310.

The Court then held that joinder of the robbery and unrelated felon-in-possession charge was improper under Rule 8:

> Plainly speaking, we can see no basis for the United States Attorney to have included this weapons charge in the indictment in the first place unless he was seeking to get before the jury evidence that likely

19

would be otherwise inadmissible, i.e., that Holloway was a convicted felon and that he had a weapon on his person when arrested. . . . Even the government does not contend that the weapon found in Holloway's possession when he was arrested was the weapon used in the robberies. Furthermore, Holloway's arrest took place almost two months after the most recent robbery. Thus, we can see no basis for the conclusion that this count of Holloway's indictment was the same as the robbery counts . . . .

Id. at 310-11.

We find the case against Hawkins no more convincing than that the Fifth Circuit rejected in Holloway. In this case, the only connection we discern between Count III and the carjacking counts is the appellant, Hawkins. We have held previously such a connection is not sufficient to sustain joinder. See Cardwell, 433 F.3d at 387 (requiring "additional facts" beyond the defendant as a basis for joinder of charges for defendant's participation in a murder-for-hire plot and for defendant's possession of a handgun when arrested for the murder-for-hire plot). Certainly, the indictment does not allege any explicit connection between the carjacking charges on November 26, 2006, and the felon-in-possession charge that stemmed from Hawkins' unrelated arrest on December 9, 2006. Nor do we find that the testimony at trial provides a basis by which to join the three counts as offenses of the "same or similar character."

Thus we do not find that Counts I and II are offenses of the "same or similar character" as Count III. While the

20

offenses all involved firearms, albeit different firearms, nothing ties them together except the defendant. There are no additional factors which indicate the offenses were "identical or strikingly similar."

Moreover, the Government's reliance on the fact that all three offenses occurred during a three-week period will not sustain joinder, as we have held consistently that a mere temporal relationship is not sufficient to establish the propriety of joinder. See Cardwell, 433 F.3d at 386 ("[W]e do not believe that a mere temporal relationship is sufficient to show that the two crimes at issue here were logically related.").[5]

Accordingly, we conclude that the district court erred in allowing joinder of Counts I and II with Count III because the charges are not of a same or similar character. We therefore turn to the question of whether this error requires reversal.


B.

An error involving misjoinder "'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or

---

[5] As we stated in Cardwell, allowing joinder based merely on a temporal relationship "would effectively read Rule 8(a) to allow limitless joinder whenever the charge resulted from the fruits of a single investigation." Cardwell, 433 F.3d at 386.

21

influence in determining the jury's verdict.'" United States v. Lane, 474 U.S. 438, 449 (1986) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)) (emphasis added); see also Mackins, 315 F.3d at 414. In assessing whether a misjoinder error results in actual prejudice, we are guided by the Lane Court's indicia of harmlessness:

> (1) whether the evidence of guilt was overwhelming and the concomitant effect of any improperly admitted evidence on the jury's verdict; (2) the steps taken to mitigate the effects of the error; and (3) the extent to which the improperly admitted evidence as to the misjoined counts would have been admissible at trial on the other counts.

Mackins, 315 F.3d at 414 (citing Lane, 474 U.S. at 450).

Hawkins argues that if there had been separate trials, no evidence presented during a trial on Count III would have been admissible in the trial on Counts I and II, and vice versa. In particular, Hawkins avers that the Government's ability to present evidence on the unrelated charge of being a felon in possession to the same jury hearing the carjacking case "increase[d] the likelihood that . . . Hawkins would be convicted" of all three charges. Br. of Appellant at 17. Hawkins asserts that a jury hearing only Counts I and II would not hear evidence that Hawkins possessed a gun on December 9, 2006, that he had a prior felony conviction,[6] that he sold drugs

---

[6] Although we have held previously that a defendant's stipulation to the existence of a prior felony "diffuse[s] any

22

to support himself, and finally, that he had stolen the .9 millimeter gun from his cousin.  Br. of Appellant at 18.

The Government responds that Hawkins suffered no undue prejudice from misjoinder because there was overwhelming evidence of Hawkins's guilt on each count, and because the evidence relating to Count III and the carjacking counts would have been mutually admissible under Rule 404(b).  Furthermore, the Government contends "the district court took steps to eliminate any spillover effect as a result of the joinder."  Br. of Appellee at 17.

The district court did provide a limiting instruction to the jury in its attempt to mitigate the effects of the joinder of all three counts.[7]  However, we conclude that, based on the

_____

passions that would be aroused by specific evidence of the defendant's felonious past," Cardwell, 433 F.3d at 388, in this case, the government presented further prejudicial evidence related only to Count III by introduction of the statements on Hawkins' drug dealing and theft of his cousin's gun.

[7] The district court gave the following instruction to the jury:

> The superseding indictment, which I will refer to simply as the indictment, contains a total of three counts.  You must, as a matter of law, consider each of the three counts of the indictment that are before you and you must return a separate verdict as to each of the three counts.  Your verdict on any count should not control your decision as to any other count, with one exception which I will note for you later.

S.J.A. 456.

23

other two indicia of harmlessness provided in <u>Lane</u>, the error in misjoinder affected Hawkins's substantial rights, and, furthermore, "'had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Lane</u>, 474 U.S. at 449 (quoting <u>Kotteakos</u>, 328 U.S. at 776, 66 S. Ct. 1239).

Although the Government argues to the contrary, we do not find that all of the evidence on Count III and that on Counts I and II would have been mutually admissible under Rule 404(b) if Hawkins had enjoyed the benefit of separate trials. Much of the evidence presented to the jury on Count III would have been only marginally relevant, if relevant at all, to Counts I and II. There was simply nothing about Hawkins being in possession of a different firearm in December that was related to any of the elements of the carjacking counts.

Additionally, under a proper balancing analysis pursuant to Federal Rules of Evidence 403 and 404(b), the probative value of the evidence would have been substantially outweighed by the

---

I instruct you in this connection that the prior conviction that is an element of the charge in Count Three and is not disputed is only to be considered by you for the fact that it exists, and for nothing else. You are not to consider it for any other purpose. You are not to speculate as to what it was for. You may not consider the prior conviction in deciding whether it is more likely than not that the defendant was in knowing possession of the firearm that is charged, which is the disputed element of the offense.

S.J.A. 481.

danger of unfair prejudice to Hawkins.  See Foutz, 540 F.2d at 736 ("[E]vidence of 'other crimes' which is relevant only to prove a criminal disposition is universally acknowledged to be inadmissible."); Holloway, 1 F.3d at 311 (concluding that had the felon-in-possession count been severed from the unrelated robbery counts, "the fact that [the defendant] was a felon would not have been repeated and repeated to the jury, nor is it likely that his possession of the gun would have been admissible" in a separate trial on the robbery counts).  As in Holloway, had Count III been tried separately from Counts I and II, "the fact that [Hawkins] was a felon would not have been repeated and repeated to the jury, nor is it likely that his possession of the [9mm] gun would have been admissible" in the carjacking trial.  Furthermore, the fact that Hawkins had stolen the 9mm gun from his cousin, a fact the Government repeatedly highlighted during closing argument, would not have come into evidence in a separate carjacking trial.[8]

Our point is illustrated by the district court's statement from the bench denying Hawkins's motion to exclude his admission that he had stolen the .9 millimeter pistol from his cousin:

> COURT:  This is very interesting because it clearly suggests that if he's willing to steal his cousin's gun, he's willing to steal anything from anybody.  If

---

[8] We do not mean to suggest that the mere possession of a gun at the time of an arrest is so prejudicial that it could never be admissible.

25

he's willing to steal his cousin's gun, why wouldn't he be willing to steal money? His cousin's gun, why wouldn't be he be willing [to] steal a car or cash or cell phones from some guy he just knows casually from the neighborhood?

J.A. 229-30. In response, Hawkins's attorney stated:

DEFENSE COUNSEL: That's exactly why we think it's not admissible, Your Honor. You're sort of making my point. If he's willing to steal from his cousin, you're telling the jury, look, what a bad guy he is.

J.A. 230.

This exchange reflects how unrelated bad conduct (the felon-in-possession of a gun) offered in evidence on another charge (carjacking) to prove the defendant's general propensity to commit crimes can have a "'substantial and injurious effect or influence in determining the jury's verdict'," as with Counts I and II in the case at bar. Lane, 474 U.S. at 449 (quoting Kotteakos, 328 U.S. at 776); see also Holloway, 1 F.3d at 312 (finding that by failing to sever the defendant's felon-in-possession count from the unrelated robbery counts, "the jury emphatically was told that [the defendant] was a bad and dangerous person 'by his very nature,' and that a felon who carried a gun was just the sort of character who was most likely to have committed the robberies charged in the indictment").

Additionally, in contrast to the circumstances of Lane or Mackins, we are not persuaded that the evidence against Hawkins related to the carjacking counts was overwhelming. In other

26

cases in which we have analyzed error resulting from misjoinder, we have determined that there was overwhelming evidence supporting guilty verdicts on all of the misjoined counts. See Mir, 525 F.3d at 358 n.1 (finding that even if there was error in joining charges against the defendant, that error was harmless because "the evidence of labor certification fraud was overwhelming, and it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict on the various counts absent the challenged testimony"); Mackins, 315 F.3d at 414 ("Most importantly, . . . this was [not] a close case . . . . The evidence supporting the guilty verdicts for [the defendants] on the drug and money laundering counts was simply overwhelming. Similarly, the evidence of Willie Mackins'[s] guilt on the counterfeit check counts was also overwhelming.").

The only evidence against Hawkins at trial on the carjacking counts was the testimony of the lone witness to the carjacking, King. Throughout the trial, counsel for Hawkins brought out multiple inconsistencies prevalent in King's story about the carjacking. For example, the number of years King claimed that he knew Hawkins, King's description of Hawkins' clothing and his statements during the carjacking, and the location of the stops made during the carjacking varied between his statement to prosecutors, testimony in front of the grand jury, and testimony at trial. Although the Government offered

27

the testimony of the two police officers King ran to after the alleged carjacking occurred, they simply repeated the story King told them.  The Government produced no further corroborating evidence of Hawkins' guilt on that charge.  The .357 caliber revolver and shotgun allegedly used in the carjacking were never found.  Hawkins' accomplices, Warren and the unidentified female, were also never found.

Essentially, the case against Hawkins on Count I and II boiled down to King's testimony that Hawkins carjacked King and Hawkins' denial that he was involved in that crime.  While the evidence against Hawkins as to Count III was overwhelming, the Government's case against Hawkins on Counts I and II was not overwhelming and "it is possible that the jury found him guilty of that crime under the rationale that with so much smoke there must be fire."  Foutz, 540 F.2d at 739; see also Holloway, 1 F.3d at 312 (finding that misjoinder of a felon-in-possession charge with unrelated robbery charges led to the defendant being "unjustifiably tried, at least in part, on the basis of who he was, and not on the basis of the material evidence presented against him").  Had the three offenses not been joined for trial, Count III's prejudicial evidence would not have reached the jury, and Hawkins might well have been acquitted of Counts I and II.

We therefore conclude that the misjoinder of Counts I and II with Count III affected Hawkins's substantial rights because the misjoinder "had substantial and injurious effect or influence in determining the jury's verdict." Kotteakos, 328 U.S. at 776. The district court's error in misjoinder of the counts against Hawkins thus requires reversal. Therefore we vacate Hawkins' convictions on Counts I and II.[9]

IV.

For the foregoing reasons, we affirm Hawkins' conviction on Count III as a convicted felon in possession of a firearm, but vacate his sentence on that count as it was determined, in part, based on his convictions under Counts I and II. We vacate Hawkins' convictions under Counts I and II. We remand this case

---

[9] Hawkins also argued on brief that the district court erred when it denied his request at trial that the court define the concept of reasonable doubt in its instructions to the jury. To the extent this claim applies to Count III, we reject Hawkins' argument. This Court has, on several occasions, held that a trial court should not define the concept of reasonable doubt for a jury unless the jury specifically requests that the court do so because of the "belief that efforts to define reasonable doubt are likely to confuse rather than clarify the concept." United States v. Williams, 152 F.3d 294, 298 (4th Cir. 1998); see also United States v. Walton, 207 F.3d 694, 696-99 (4th Cir. 2000) (en banc); United States v. Reives, 15 F.3d 42, 45 (4th Cir. 1994); United States v. Adkins, 937 F.2d 947, 950 (4th Cir. 1991). The jury in the case at bar did not make such a request; therefore clear precedent establishes that denial of the instruction was proper.

29

to the district court for retrial on Counts I and II and for resentencing on Count III.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I concur in the court's judgment that joinder error requires us to vacate Hawkins's convictions on Counts I and II. I write separately simply to note that this circuit's approach to Federal Rules of Evidence 404(b) and 403 may well have precipitated the error in this case.

We have used two interrelated theories in construing these rules to permit admission of evidence of prior bad acts, notwithstanding the potential of this evidence to prove criminal propensity. See Michelson v. United States, 335 U.S. 469, 475-76 (1948). On the one hand, we have construed Rule 404(b) to permit admission of "all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted). On the other hand, we have construed Rule 403 to require exclusion of evidence as prejudicial "only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." Id. at 1467 (internal quotation marks omitted). Together, these theories require exclusion of prior bad act evidence only in rare and egregious circumstances.

Indeed, we have consistently held that the admission of even highly prejudicial bad act evidence does not violate either rule. See, e.g., United States v. Branch, 537 F.3d 328, 341-42 (4th Cir. 2008) (affirming admission of evidence of prior unrelated arrest and conviction for possession with intent to distribute cocaine base in trial for the same crime); United States v. Uzenski, 434 F.3d 690, 710 (4th Cir. 2006) (affirming admission of evidence of defendant's teenage attempts to make pipe bombs in trial of defendant -- now an adult -- for manufacture of a pipe bomb); United States v. Hodge, 354 F.3d 305, 311-12 (4th Cir. 2004) (affirming admission of evidence of prior unrelated drug transactions in trial for possession of cocaine with intent to distribute); United States v. Van Metre, 150 F.3d 339, 350-52 (4th Cir. 1998) (affirming admission of evidence of a prior conviction for kidnapping and sexual assault in trial for separate act of unrelated kidnapping).

In the face of this precedent, it is not at all surprising that a busy district judge, concerned with both justice and judicial economy, might find joinder permissible if evidence as to one count demonstrated likelihood to commit a crime charged in another count. Of course, as the majority explains, the law does not permit such joinder any more than it permits admission of propensity evidence.