**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4124**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL KENNETH YOUNG, a/k/a Mizzle,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Margaret B. Seymour, Senior District Judge.  (3:15-cr-00051-MBS-1)

Argued:  September 25, 2018                    Decided:  October 25, 2018

Before GREGORY, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Affirmed in part, reversed in part, vacated in part, and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

**ARGUED**:  William Michael Duncan, AUSTIN & ROGERS, PA, Columbia, South Carolina, for Appellant.  Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF**:  Beth Drake, United States Attorney, Jimmie Ewing, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Michael Kenneth Young was charged in a single indictment with six drug- and gun-related offenses, stemming from four separate encounters with the police. The jury acquitted Young on three of those charges, each related to drugs, but convicted him on the remaining three charges, each related to possession of a firearm.

On appeal, Young challenges, first, the joinder of the offenses against him in a single indictment, and the district court's refusal to sever and try separately certain of the charges. A misjoinder or failure to sever requires reversal only if it results in prejudice to the defendant, and because we conclude that there was no such prejudice here, we find that the district court did not reversibly err in denying Young's motion.

Young also challenges the district court's refusal to suppress evidence seized in connection with three of his arrests. We agree with the district court as to the first two arrests, but disagree as to the third, in which the government invoked the inventory search exception to justify a warrantless search of a car. Because the government failed to present any evidence that the search was conducted pursuant to standardized criteria, the inventory search exception does not apply, and we therefore conclude that the district court erred in denying Young's motion to suppress the firearms recovered from that search.

## I.

## A.

2

We begin by describing the four incidents that gave rise to the six charges against Young. First, law enforcement officers arranged for a confidential informant to purchase crack cocaine in a controlled buy on July 28, 2012. The informant later identified Young, a convicted felon, as the person who sold him the crack cocaine. Second, on April 2, 2014, law enforcement officers pulled over a car in which Young was riding as a passenger while his then-girlfriend (now wife), Amelia Cunningham, drove. The officers searched the car, and recovered a gun from the passenger-side door and crack cocaine from above the passenger-side visor. Within throwing distance of the car, they found a bag of marijuana. Young was then stopped again, on November 3, 2014, once more riding as a passenger while Cunningham drove. Again, officers searched the car, and this time, they recovered a gun from between the passenger's seat and the center console.

It was Young's fourth and final arrest that led to the inventory search at issue in this appeal. On January 30, 2015, Deputy Kimberly MacGregor of the Richland County Sheriff's Department followed Young's car into a hotel parking lot. Young, who had been driving, got out of the car, and MacGregor asked him for his license. MacGregor discovered that Young's license was suspended, and arrested him. MacGregor then attempted to locate the owner of the car, and when she was unsuccessful, arranged to impound the car and have it towed. At around the same time, officers working with MacGregor searched the car, and recovered two guns under the passenger seat.

**B.**

The government charged Young with crimes relating to these four incidents in a six-count indictment. Count 1 of the indictment, arising from the controlled buy in July

3

2012, charged Young with possession with intent to distribute and distribution of cocaine base, and aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (2012) and 18 U.S.C. § 2 (2012). As to the April 2014 traffic stop and vehicle search, Young was charged with three counts: possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 2); using and carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (2012) (Count 3); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e) (2012) (Count 4). For the November 2014 traffic stop and vehicle search, Young was charged with a second count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e) (Count 5). And as a result of the January 2015 vehicle search, Young was charged with a third count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e) (Count 6).

Before trial, Young moved to sever Counts 1 and 5 from each other and from Counts 2, 3, and 4.[1] Young, in other words, sought three separate trials: one on the drug charge arising out of the July 2012 controlled buy (Count 1); a second on the drug and gun charges arising out of the April 2014 traffic stop and vehicle search (Counts 2, 3, and 4); and a third on the gun charge arising out of the November 2014 traffic stop and

---

[1] Count 6 was not initially included in the indictment against Young. The grand jury returned a superseding indictment on July 7, 2015, which added Count 6 based on Young's January 2015 arrest. By then, Young already had filed his severance motion, and he did not amend that motion or otherwise move to sever Count 6 in response to the superseding indictment.

4

vehicle search (Count 5). The district court denied Young's motion, recognizing that the Federal Rules of Criminal Procedure permit broad joinder and concluding that the allegations in each count appeared to be "related to a common scheme or plan." J.A. 44. If necessary at trial, the district court explained, it would give "limiting instructions to the jury . . . to cure any issue with regard to these counts." *Id.*

Young also moved to suppress the physical evidence collected from the April 2014, November 2014, and January 2015 vehicle searches. As to the April 2014 and November 2014 searches, Young argued that the traffic stops that preceded the searches were unlawful. This, according to Young, warranted suppression of all the evidence discovered as a result of each stop. The district court disagreed, finding that on both occasions, the officers had the requisite reasonable suspicion to stop the car, and that in the course of each valid stop, the officers developed probable cause to search the car under the automobile exception to the warrant requirement.

The warrantless search of the car in January 2015 was different: Instead of arguing that probable cause justified the search under the automobile exception, the government invoked the inventory search exception. As the district court explained, that exception allows for searches of cars that are lawfully impounded – taken into police custody – without a warrant and without probable cause, so long as the government establishes that the search was "performed pursuant to standardized criteria such as a uniform policy," and that "such criteria [was] administered in good faith." J.A. 179.

To support the application of the inventory search exception, the government relied on the testimony of arresting officer Deputy MacGregor. At the suppression

hearing, MacGregor explained that after she arrested Young, she and other officers began to prepare an inventory of the contents of the car Young had been driving. When asked why, MacGregor responded that "[the car] was being towed and that way we were not responsible for anything left in that vehicle." J.A. 148. The government introduced no other testimony or documentary evidence regarding Richland County Sheriff's Department policy on inventory searches of cars.

At the close of the suppression hearing, Young argued that the government had failed to justify application of the inventory search exception because MacGregor never testified that the January 2015 search was conducted pursuant to a standard departmental policy or procedures. The district court acknowledged the requirement that inventory searches be "performed pursuant to standardized criteria," J.A. 179, but concluded that MacGregor's testimony was sufficient to satisfy this requirement because it showed that the search was "undertaken in good faith and for the purpose of securing objects in the vehicle and not because of any suspicion of criminal activity," J.A. 180. Accordingly, the district court found that the January 2015 search was valid under the inventory search exception, and denied Young's motion to suppress the evidence recovered from that search.

The case proceeded to a jury trial. After a three-day trial, the jury acquitted Young on all of the drug-related charges – Counts 1, 2, and 3 – and convicted Young on the felon-in-possession charges – Counts 4, 5, and 6. Young was sentenced to 235 months' imprisonment on each count of conviction, to run concurrently.

This timely appeal followed.

6

## II.

### A.

We begin with Young's contention that the charges against him were improperly joined in the indictment and at trial. Specifically, Young argues that under Federal Rule of Criminal Procedure 8(a), which governs the initial joinder of offenses, Counts 1 and 5 were improperly joined with Counts 2, 3, and 4 in the indictment. Even if there was no misjoinder, Young contends, these Counts should have been severed for trial under Federal Rule of Criminal Procedure 14(a), which allows a district court to order separate trials if joinder will prejudice a defendant. "Although the joinder rules are related, we apply a different standard of review to each rule." *United States v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011). We review de novo whether charges are properly joined in an indictment under Rule 8(a), and for abuse of discretion whether the district court erred in denying a motion to sever under Rule 14(a). *Id.*

Under Rule 8(a), two or more offenses may be charged in the same indictment when the offenses "are of the same or similar character," "are based on the same act or transaction," or "are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8, as we have recognized, permits "very broad joinder because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding." *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (internal quotation marks and citations omitted). If joinder is proper under Rule 8, district courts

7

nevertheless may, in certain circumstances, order separate trials of counts in the indictment under Rule 14(a). *See* Fed. R. Crim. P. 14(a). "Such cases, however, will be rare." *United States v. Cardwell*, 433 F.3d 378, 387 (4th Cir. 2005). "[B]ecause of the efficiency in trying [a] defendant on related counts in the same trial[,]" *Hawkins*, 776 F.3d at 206 (quoting *Cardwell*, 433 F.3d at 385), our precedent makes clear that "joinder is the 'rule rather than the exception,'" *id.* (quoting *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)).

Young argues that his case fits within the exception, not the rule. Specifically, Young contends that the charges related to each incident – the July 2012 controlled buy (Count 1), the April 2014 traffic stop and vehicle search (Counts 2, 3, and 4), and the November 2014 traffic stop and vehicle search (Count 5) – should have been tried separately. Those incidents, Young notes, occurred months – and in some cases, years – apart, and involved different law enforcement agencies and different trial witnesses. And according to Young, the presence of the drug-related charges from July 2012 and April 2014 could well have affected his trial on the felon-in-possession charge from November 2014: Because of the drug-related charges, the government was able to elicit trial testimony that drug dealers often carry firearms, encouraging the jury to infer from the drug charges against Young that he also was likely guilty on the firearm charge. More generally, Young cites the cumulative effect of the evidence from the multiple charges against him, and its potential to confuse or overwhelm the jury into believing that he must be guilty of something, notwithstanding weaknesses in each individual case.

8

We disagree. As we have explained, under either Rule 8(a) or Rule 14(a), reversal is warranted only where a misjoinder or failure to sever caused the defendant to suffer prejudice at trial. *Blair*, 661 F.3d at 768 (reversal under Rule 8 is required only if the misjoinder results in "actual prejudice" (quoting *United States v. Hawkins*, 589 F.3d 694, 704 (4th Cir. 2009), *amended and superseded on other grounds by* 776 F.3d 200)); *id.* at 770 (reversal under Rule 14 is required only if the trial resulted in "clear prejudice" (quoting *Cardwell*, 433 F.3d at 387–88)). In assessing whether a misjoinder or failure to sever resulted in prejudice, we consider three "indicia of harmlessness":

> (1) whether the evidence of guilt was overwhelming and the concomitant effect of any improperly admitted evidence on the jury's verdict; (2) the steps taken to mitigate the effects of the error; and (3) the extent to which the improperly admitted evidence as to the misjoined counts would have been admissible at trial on the other counts.

*Id.* at 769 (quoting *Hawkins*, 589 F.3d at 704).

The government contends that the first two indicia show that any misjoinder or failure to sever in this case did not prejudice Young, and we agree.[2] First, the evidence of Young's guilt as to the three felon-in-possession charges – the only charges on which he was convicted – was overwhelming. At trial, Young stipulated that he previously had been convicted of a felony, making him ineligible to possess a firearm. As to whether he nevertheless did possess firearms, the government elicited highly probative testimony from the arresting officers and from DNA experts. The officers who arrested Young in

---

[2] The government does not rely on the third factor, involving the cross-admissibility of evidence. We need not address that factor here because we agree with the government that the first two are dispositive.

April and November of 2014 both testified that when they conducted their traffic stops, they observed guns in close proximity to the passenger seat in which Young was sitting: in the passenger-side door in April and between the passenger seat and the center console in November. A DNA expert bolstered that account, explaining that her analysis tied Young's DNA to the DNA found on both guns. As to Young's January 2015 arrest, the arresting officer testified that two guns were found underneath the passenger seat of the car Young was driving, and a second DNA expert opined that the DNA on one of those guns was 130 trillion times more likely to be Young's DNA than that of anyone else in the general population.

Second, the district court made good on its promise to mitigate any potential prejudice through its instructions to the jury. Responding directly to the concern that jurors might view the trial evidence cumulatively, rather than count-by-count, the court instructed the jury that "the charges set forth in each count in the Indictment constitute separate and distinct matters," and that the jury must "consider each count and evidence applicable to each count separately" and "state [its] findings as to each count separately." J.A. 740. And the court reiterated that "[t]he defendant may be found guilty or not guilty of any one or all of the offenses charged." *Id.* We have previously considered the effect of virtually identical jury instructions, and concluded that they substantially "mitigate the effect of any possible spillover of prejudicial evidence." *United States v. Mackins*, 315 F.3d 399, 415 (4th Cir. 2003) (citing *United States v. Lane*, 474 U.S. 438, 450 (1986)). We have no reason to doubt their efficacy in this case, especially given the jury's verdict, convicting Young on the three felon-in-possession charges but acquitting him on every

10

drug-related charge. *See id.* (noting that a split verdict "strongly indicates" that the jury has considered the evidence as to each count separately, rather than "allow[ing] the evidence as to the misjoined [counts] . . . to affect their verdicts on the other counts").

In short, we need not decide in this case whether the charges against Young were properly joined in a single indictment, or whether they should have been severed for trial. Even assuming that the charges were misjoined, reversal would be appropriate only if that error actually prejudiced Young at trial. And for the reasons described above, we conclude that there was no such prejudice here. On that ground, we hold that the district court did not reversibly err when it denied Young's motion to sever.

**B.**

We turn next to the district court's denial of Young's motion to suppress the evidence recovered from the April 2014, November 2014, and January 2015 searches. In reviewing a district court's decision to deny a motion to suppress, we "review[] conclusions of law de novo and underlying factual findings for clear error." *United States v. Clarke*, 842 F.3d 288, 293 (4th Cir. 2016) (quoting *United States v. Banks*, 482 F.3d 733, 738 (4th Cir. 2007)).

The district court concluded that there was no merit to Young's motion to suppress the evidence recovered from the April 2014 and November 2014 searches, and for the reasons given by the district court, we agree: In both cases, reasonable suspicion supported the initial traffic stops, and in both cases, probable cause to search the vehicles under the automobile exception emerged during the course of those valid stops. *See* J.A. 176–78. We disagree, however, that the January 2015 search can be justified under the

11

inventory search exception, the sole basis on which the government has sought admission of the guns uncovered in that search.

An inventory search is a well-recognized exception to the Fourth Amendment's warrant requirement. Under that exception, the police may conduct a search of property that has been lawfully seized and detained, like a car properly impounded and towed to a police station. Such searches are reasonable even in the absence of a warrant or probable cause, the Supreme Court has concluded, because they allow the police to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). But to protect against "general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990), the Supreme Court has insisted that inventory searches be conducted only pursuant to "standardized search procedures" that "curtail the discretion of the searching officer" and are "administered in good faith[,]" *Banks*, 482 F.3d at 739 (first citing *Wells*, 495 U.S. at 4; then quoting *Bertine*, 479 U.S. at 374).

In this case, the district court found, and Young does not dispute, that Deputy MacGregor and the other officers acted in good faith when they conducted the January 2015 search of the car that Young had exited. But that is not the end of the inquiry mandated by the Supreme Court. There remains the question of whether that search was conducted according to "'standardized criteria,' such as a uniform police department policy," *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (quoting *Bertine*, 479 U.S. at 374 n.6), that "sufficiently limit[ed] [the] searching officer's discretion[,]"

12

*id.*; *see also Clarke*, 842 F.3d at 293 ("For the inventory search exception to apply, the search must have been [1] conducted according to standardized criteria . . . , and [2] performed in good faith." (internal quotation marks and alterations omitted) (quoting *Matthews*, 591 F.3d at 235)).

We recognize that the bar for proving the existence of the requisite standard policy is not a high one. The policy and criteria need not be in writing; "testimony regarding standard practices" will do. *Clarke*, 842 F.3d at 294 (quoting *Matthews*, 591 F.3d at 235). But whether through introduction of written police department rules and regulations or through police officer testimony, there must be "sufficient evidence" from which a court may assure itself that the searching officer's discretion was limited by standardized criteria governing the conduct and scope of inventory searches. *United States v. Bullette*, 854 F.3d 261, 266 (4th Cir. 2017).

Here – in contrast to other cases in which we have approved inventory searches – the government did not provide a written departmental policy governing inventory searches. *Cf., e.g.*, *Clarke*, 842 F.3d at 294 (government provided both written department policy and standard inventory search form signed by officer to district court); *Matthews*, 591 F.3d at 233 (quoting detailed police department policy on inventory searches); *Banks*, 482 F.3d at 739 n.5 (same). Nor, critically, did Deputy MacGregor's testimony fill that gap. To be sure, MacGregor explained her reason for conducting an inventory search, testifying that the car was searched "[b]ecause it was being towed and

13

that way [the police] were not responsible for anything left in [the] vehicle." J.A. 148.[3]

And that testimony, presumably, was the basis for the district court's finding that the search was conducted in good faith. But it does not describe nor even refer expressly to any Richland County Sheriff's Department policy, or to any standard procedures or criteria that the department requires officers to observe in carrying out inventory searches. And without that, we cannot assess whether the search in this case "conforms to our precedent" requiring such standardized criteria, *Bullette*, 854 F.3d at 266, and we cannot determine whether the searching officers' discretion was "sufficiently limit[ed]" by that criteria to bring it within the inventory search exception, *Matthews*, 591 F.3d at 235.

Accordingly, we conclude that the government failed to establish the existence of the standardized criteria required to apply the inventory search exception to the January 2015 search. The government has identified no other ground for admission of the two guns recovered from that search, which became the basis for Count 6's felon-in-

---

[3] We note that a police officer's initial decision to tow and impound a vehicle – the necessary predicate for an inventory search – also must be governed by standardized criteria. *Bertine*, 479 U.S. at 375; *see also United States v. Cartrette*, 502 F. App'x 311, 315–16 (4th Cir. 2012) (while police are afforded "more discretion" in deciding whether to impound vehicles than in conducting inventory searches, that discretion must be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity" (quoting *Bertine*, 479 U.S. at 375)). That requirement was never discussed during the suppression hearing in this case. But because Young has not raised the issue on appeal, we do not consider it here, and consider only the associated inventory search of the vehicle. *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248–49 (4th Cir. 2013) (describing rule that contentions not raised in opening brief on appeal are abandoned).

possession charge against Young. We therefore reverse the district court's denial of Young's suppression motion as it applies to the January 2015 search, vacate Young's conviction on Count 6 of the indictment, and remand for resentencing in light of this decision.

## III.

For the foregoing reasons, we affirm Young's convictions on Counts 4 and 5 of the indictment. We reverse the district court's denial of Young's suppression motion as it applies to the January 2015 search, vacate Young's conviction on Count 6 of the indictment, and remand for resentencing in light of this decision.

*AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED*